LOTTINGER, Judge.
Petitioner sued asking to be declared the owner of eight (8) certain lots of ground situated in the Parish of East Baton Rouge, Louisiana. The defendant answered, pleading estoppel, and in the alternative pleading that the petitioner was never the true owner of said property. The Lower Court rendered judgment in favor of the petitioner and the defendant appealed.
Petitioner was married to Margaret Anderson during the year 1928. They lived together until the early part of 1946. During 1940 Mrs. Octavia Tullís sold lots eight, nine, sixteen and seventeen (8, 9, 16 and 17) of Square Eleven (11) of Paradise Park to: Margaret Anderson Cato, born Anderson, married but once and then to Eugene Cato, with whom she resides in the Parish of East Baton Rouge, Louisiana. On June 21, 1944 Mrs. Tullís sold lots ten, eleven, fourteen and fifteen (10, 11, 14 and 15) of Square Eleven (11) of Paradise Park to Mrs. Cato. Neither of the said deeds stipulated that the property was being purchased as separate property of Mrs. Cato, and so, it is presumed that same was being purchased for and on behalf of the community which existed between Mr. and Mrs. Cato.
On February 2, 1946, by Act of Sale with Mortgage passed before Alfred D. St. Am- *258 ant, Notary Public, Mrs. Cato sold the eight lots to Melvin A. Foster. Although the said Act recites that Mr. Cato appears to aid and authorize his wife, his signature does not appear on the deed. On June 4, 1951 Melvin Foster sold the said property to William B. Bynum, Jr., the defendant in this suit.
The petitioner bases the suit upon the proposition that the lots became community property when purchased by his wife. He further claims that community property cannot be sold without the husband’s written consent, and that the purported sale by his wife was made without his knowledge and consent.
The defendant claims that petitioner is estopped from attacking the sale, because he actually arranged same, he was present at the execution thereof, and that he received half of the consideration paid.
We feel, as did the Lower Court, that the petitioner did actually have full knowledge, and was present at the execution of the sale. Mrs. Cato testified that her husband first informed her of Mr. Foster’s desire to purchase property. She further testified that her husband accompanied her to the Notary’s office, and was actually present at the execution of the sale, although he did not sign same. She stated that after the sale was passed she and her husband walked outside the Notary’s office, and she handed her husband one-half (Vü) of the consideration, at which time her husband told her he was leaving town. Mrs. Tullis verified the fact that petitioner was present at the execution of the sale, although she does not know whether or not he received any of the consideration. Although Mr. Foster did not know petitioner and could not identify him, he did testify that there was a man with Mrs. Cato at the time of the execution of the sale. The Notary before whom the sale was passed is dead, and we are not favored with his testimony.
The Lower Court found that the petitioner accompanied his wife to the Notary’s office, was present when she signed the deed, and that petitioner received such portion of the consideration as was satisfactory to him. The Lower Court, however, held that the transaction was invalid because of the absence of the husband’s signature, and annulled the Act of Sale. In so holding, the Lower Court based its decision upon Articles 2402, 2404 and 2275 of the LSA-Civil Code, as well as Vanzant v. Morgan, La.App., 181 So. 660. In the cited case a certain tract of land was purchased by the wife during the existence of the community. The wife later sold the property to defendant for a certain cash consideration plus the assumption of certain liens existing against same. There was no appearance in the said sale by the husband. On the same date, an Act of Sale by the wife and husband to the defendant, covering the same property was made. The petitioner thereafter sued to annul both sales. The second sale, which was executed by both the husband and wife, was annulled for reasons with which we are not now concerned. The first sale, which was signed only by the wife, was also annulled under the doctrine that a wife cannot alienate community property without the authority and consent of her husband. The Court said that there was no estoppel on part of the husband.
We do not however feel that the Vanzant case should be controlling in the present situation. We feel that the facts presented show a much stronger situation in favor of the equitable doctine of estoppel in the present case. In Stewart v. Mix, 30 La.Ann. 1036, a tract of land was purchased by the wife, authorized and assisted by the husband. Some twenty-five years later, the defendant attempted to sell the property under execution for a separate indebtedness of the wife. The petitioner sued to enjoin the sale and to have the property declared as community. The defendants proved that in 1867 the husband had authorized and assisted his wife in an Act of Mortgage on the property to secure a loan for her separate, individual benefit; that he had contributed actively in a repeated, public and *259 false assertion of ownership in his wife as her separate property. The Court said as follows:
“This whole proceeding is bad in law, and equally bad in morals. If the wife is not really the owner of this property, the husband has done all that he could do to establish and confirm the ownership in her, and to mislead the public as to the real ownership. If her title is apparent, not real; if it rests upon a basis of false pretenses and assumptions, the husband’s hand must not be the first that is raised to strike down the fabric of which he was the chief architect.”
On rehearing the Court stated:
“We have reconsidered with great care the facts of this case, and the very elaborate and able argument of plaintiff’s counsel; but we are confirmed in the correctness of the decree heretofore rendered. The fundamental error of plaintiff’s argument is in supposing that Stewart, the husband, has the same rights as his creditors would have if attacking the sale. The question as to Stewart is one of estoppel. No principle of law is better settled than this, that one will not be heard in his own interest to controvert or deny the truth of a state of facts which he has openly and publicly led others to believe, and upon the faith of which they have acted.
“This property may indeed be community property, but C. S. Stewart has, by his acts and conduct, debarred himself from asserting it to the prejudice of third persons. Thus, I may be the undoubted and absolute owner of a piece of property, yet if by my acts and conduct I hold another out to the world as owner, I will not be heard to assert my claim to the prejudice of those who may have been misled by me.”
The Lower Court came to the conclusion that the Stewart case did not apply here because Foster, the purchaser, was not misled by anything the plaintiff said or did or failed to say or do, since Foster did not know plaintiff at the time of the conveyance of the property. We do not agree with the Lower Court’s conclusion. The average purchaser of land does not know or understand the complexities of our community property law. Foster signed an act of sale which stated that Eugene Cato was appearing to aid and authorize his wife, although Eugene Cato did not, in fact, sign the sale. On the morning of the sale while en route to the Notary’s office, Foster picked up a man with Margaret Anderson Cato when he went to her house. The man was, in truth and in fact, Eugene Cato and Eugene Cato was there while the sale was being passed. Furthermore, Eugene Cato made no protest to the execution of the sale and the payment of the money to him. We are of the opinion that the record shows Eugene Cato did everything possible to get the sale completed so that he could get his portion of the consideration and that he should not now be heard in his interest to controvert or deny the truth of a set of facts which he has openly and publicly lead others to believe.
While we are wholly in accord with the number of cases which hold that title to real property must be transferred in writing, and that community property cannot be transferred without the signature or written consent of the husband, we feel that the holding in Stewart v. Mix covers the identical question which is now before us. The record conclusively shows that the petitioner was instrumental in the arrangement of the sale, that he was actually present at the execution of the sale, and that he received his share of the consideration thereby ratifying the act of sale made by his wife. Certainly we do not believe that he should be now permitted to come into Court and upset the sale, the property of which is in the hands of a third person, by claiming that he did not sign the act. We feel that if he were so permitted, such would not be in line with justice and *260 equity. His actions, we feel, were just as deceiving, if not more so, than were the actions of the husband in the Stewart case.
The plaintiff, however, contends that title to property cannot be acquired by estoppel. No one here is attempting to acquire property by estoppel. The wife here had a deed in her name. The defendant has a deed in his name, which deed was ratified by the husband’s acceptance of the consideration. The defendant is merely asserting his right of estoppel to deny the petitioner the right to reap the benefits of his deceitful and fraudulent conduct.
For the reasons hereinabove assigned, judgment of the Lower Court will be reversed, and there will be judgment herein dismissing the petitioner’s action.
Judgment reversed.